IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JASON R. BOGGS,**

        **Plaintiff,**

  v.                                          **Civil Action 2:20-cv-6135**
                                                    **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

**OPINION AND ORDER**

Plaintiff, Jason R. Boggs, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). The parties in this matter consented to the Undersigned under 28 U.S.C. § 636(c). (Docs. 5, 6). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

Plaintiff protectively filed his application for DIB on July 27, 2018, alleging that he was disabled beginning October 1, 2012, due to unspecified bipolar disorder, occupational and social impairment, anxiety, chronic sleep impairment, depressed mood, horseshoe kidney, kidney stones, post-traumatic stress disorder (PTSD), and attention deficit hyperactivity disorder (ADHD). (Tr. 270–71, 293). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a hearing on December 10, 2019. (Tr. 97–136). The ALJ denied benefits in a written decision on January 30, 2020. (Tr. 79–96). That became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on December 1, 2020 (Doc. 1), and the Commissioner filed the administrative record on June 2, 2021 (Doc. 13).  Plaintiff filed his Revised Statement of Errors (Doc. 16) on July 16, 2021, and Defendant filed an Opposition (Doc. 17) on August 10, 2021.  Plaintiff did not file a Reply.  Thus, this matter is now ripe for consideration.

### A. Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing:

> The [Plaintiff] testified to, or elsewhere indicated an inability to work due to his mental health impairments. He stated that since the date of the last Administrative Law Judge decision[1], he was diagnosed with anxiety and PTSD and his mental health symptoms have worsened. The [Plaintiff] testified that during the period at issue, his anxiety was severe and prevented him from going out of the house alone. The [Plaintiff] testified that he would need someone with him if he had to go somewhere to lessen his anxiety. He stated that he felt anxious in crowds and would survey a room for danger describing himself as [hypervigilant]. The [Plaintiff] testified that his prescribed psychotropic medications help a little bit with his mood. He noted that he is easily overwhelmed, which causes him to be aggravated and angry. The [Plaintiff] testified that he tries to avoid people and disconnected from the outside world.

(Tr. 88–89).

### B. Relevant Medical Evidence

The ALJ summarized the relevant medical records as to Plaintiff's mental health treatment:

> The record reflects the [Plaintiff]'s history of depression, ADHD, as well as anxiety and PTSD, for which the [Plaintiff] has received mental health treatment. Treatment records note the [Plaintiff]'s reports of low energy and difficulty with memory, attention, concentration and pace; however, during mental status examinations, his memory was grossly intact, his thoughts were logical, linear and goal oriented and he demonstrated adequate concentration and average intelligence (Exhibit B2F/206, 598, 625, 807). [ ].

(Tr. 86).

---

[1] Plaintiff previously filed an application for DIB which were denied by administrative decision on October 5, 2015. (Tr. 137–53).  The Appeals Council declined jurisdiction on April 7, 2017.  (Tr. 154–56).

> Mental health status examinations show the [Plaintiff] to be mildly anxious (Exhibit B2F/21-22, 92, 501, 546, 616). Although at times, he appears less restless with stable mood and calm demeanor (Exhibit B2F/207, 265, 309, 428). The [Plaintiff] has shown good response to medication and individual and group therapy (Exhibit B2F/165, 498-499, 656-657, 700). He has reported decreased anger, awareness of relationship patterns and improved interpersonal communications skills (Exhibit B2F/46). Treatment notes indicate good progress with mood and reduction of depressive symptoms and enhanced confidence in ability to cope more effectively with anger (Exhibit B2F/675). On occasion, the [Plaintiff] appearance was slightly disheveled, but is otherwise noted to be appropriately dressed and groomed (Exhibit B2F/211, 291, 309, 347, 503, 626). The [Plaintiff] generally maintained good eye contact and presented as polite and cooperative (Exhibit B2F/21, 91). The [Plaintiff] indicated no difficulty with performance of activities of daily living such as preparing meals, performing housework, managing medications or managing finances and reported no severe psychiatric symptomology that would interfere with the ability to function and maintain independence in the community (Exhibit B2F/273, 318). The [Plaintiff] testified that during a typical day he would attend the Veteran's Transition and Empowerment Center (VTEC) for an hour, occasionally go to the gym, watch television and play games on his phone. The record indicates the [Plaintiff] has generally taken his medication as directed, attended VTEC classes as scheduled, participated in home telehealth program and health buddy sessions regularly (Exhibit B2F/163, 189). [ ].

(Tr. 87).

> [ ] Treatment notes indicate that he has endorsed psychiatric symptoms such as nightmares, flashbacks, hypervigilance, restlessness, agitation, irritability, mood swings and grief (Exhibit B2F/14-16, 83, 161). On occasion, the [Plaintiff] was noted to exhibit mildly anxious and depressed mood, restlessness, racing thoughts, mildly circumstantial thought process and/or guarded demeanor, but otherwise normal mental status examinations (Exhibit B2F/21, 46, 91, 110, 139, 265, 300, 350, 501, 503, 546, 598, 675, 705). The [Plaintiff] often presented with stable and euthymic mood (Exhibit B2F/5, 9, 28, 45, 349, 367, 397, 446, 508, 532). Treatment notes reflect an increase of symptoms during times of increased psychosocial stress related to finances, family deaths and health and well-being of the [Plaintiff]'s fiancé and her children (Exhibit B2F/28, 131, 291, 300, 397, 504). The [Plaintiff] has been mostly compliant with mental health treatment and recovery plans including medication management and individual and group therapy (Exhibit B2F/165, 252, 295, 311, 350, 361). Treatment notes document continued, ongoing symptom improvement and better wellness and interpersonal relationships (Exhibit B2F/139, 148, 400, 477, 525, 656). Overall, the record documents good response to treatment and the [Plaintiff]'s reports of continued improvement (Exhibit B2F/139, 148, 207, 266). [ ].

(Tr. 89).

**C. The ALJ's Decision**

The ALJ found that Plaintiff last met the insured status requirement through December 31, 2017, and did not engage in substantial gainful employment during the period from his alleged onset date of October 1, 2012, through his date last insured of December 31, 2017. (Tr. 85). The ALJ determined that through the date last insured, Plaintiff had the following severe impairments: unspecified bipolar disorder; post-traumatic stress disorder (PTSD); generalized anxiety disorder and attention deficit hyperactivity disorder (ADHD). (*Id.*). Still, the ALJ found that, through the date last insured, none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 86).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found that:

> After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the [Plaintiff] is able to understand, remember and carry-out one to three-step short cycle tasks in a routine work setting where major changes are explained in advance and gradually implemented. The work should not require strict production quotas or be performed at a strict production rate pace. The [Plaintiff] can have occasional interaction with co-workers, but no tandem or shared tasks; occasional interaction with supervisors with no over-the shoulder supervision and occasional interaction with the public, but not in a customer service capacity.

(Tr. 87–88).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence and other evidence in the record for the reasons explained in this decision." (Tr. 89).

As for the relevant opinion evidence, the ALJ found,

> The undersigned the State agency medical consultant opinions at Exhibits B3A, B4A, affirmed at 6A. The medical consultants adopted the prior Administrative Law Judge finding that indicated no severe physical impairment and that the

4

> [Plaintiff] was capable of work at all exertional levels. The undersigned finds this opinion persuasive as it is supported by and consistent with the current evidence of record, which lacks objective findings to support a physical condition that would cause more than a minimal impact on the [Plaintiff]'s ability to perform any physical aspects of work on a regular and ongoing basis.
>
> The undersigned also finds the State agency psychological consultant opinions at Exhibits B3A, 4A, affirmed at 6A persuasive. The psychological consultants declined to adopt the mental findings of the prior decision given new evidence of the [Plaintiff]'s diagnosis of anxiety and PTSD. The limitations expressed by the State agency consultants are supported by and consistent with the current evidence regarding the [Plaintiff]'s abilities in each of the functional domains discussed above and while, similar to the mental residual functional capacity of the prior decision, the State agency opinion further addresses the [Plaintiff]'s adaptation and concentration and persistence limitations in light of his anxiety and PTSD.

(Tr. 90–91).

Relying on the vocational expert's testimony, the ALJ concluded that, through the date last insured, Plaintiff was unable to perform his past relevant work as a fast-food worker, security guard, sales associate, material handler, or aviation mechanic; but he could perform medium exertional jobs that exist in significant numbers in the national economy such as a linen room attendant, janitor, or trash collector. (Tr. 91–92). She thus concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from his alleged onset date of October 1, 2012, through December 31, 2017, the date last insured. (Tr. 93).

## II.   STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

5

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

The Undersigned reads Plaintiff's general argument to be that the ALJ erred in crafting his RFC. More specifically, Plaintiff argues that the ALJ failed to give weight to the Veterans Administration (VA) Total Disability Individual Unemployability (TDIU) determination, which found him 70% disabled. Plaintiff also argues that the ALJ further erred in finding a residual functional capacity to perform a full range of work at all exertional levels without expressly addressing Plaintiff's off-task behavior or monthly absenteeism. (Doc. 16).

### A. Plaintiff's RFC

The ALJ alone is responsible for determining a Plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1546(c). While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). An RFC determination is a legal decision rather than a medical one, and the development

6

of a claimant's RFC is solely within the province of an ALJ. *See* 20 C.F.R. §§ 404.1527(e), 405.1546; *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (stating that the responsibility for determining a claimant's RFC rests with the ALJ, not a physician).

In crafting Plaintiff's RFC, the ALJ explained that she found the prior administrative medical findings of the state agency reviewing psychologists to be the most persuasive opinion evidence. (Tr. 90–91). Of note, the new regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017. (Tr. 82, 270–271). *See* 20 C.F.R. § 1520c (2017). The new regulation at 20 C.F.R. § 404.1520c differs from the previous regulation at 20 C.F.R. § 404.1527 in several key areas. The agency no longer has a "treating source rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Now, under the applicable regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a).

Further, while the ALJ must articulate consideration of all medical opinions, the regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. 20 C.F.R. § 404.1527(c)(2). While the regulations at 20 C.F.R. § 404.1520c refer to the limitations opined by the state agency reviewing physicians and psychologists as "prior administrative medical findings," the Undersigned will refer to them as "assessments" or "opinions" for ease and clarity. § 404.1520c(a), (b). Of note, the ALJ is only required to explain how he or she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2).

Here, the ALJ explained that she found the prior administrative medical findings of the state agency reviewing psychologists to be "persuasive." (Tr. 90–91).[2] In August 2018, Kristen Haskins, Psy.D., reviewed the record and concluded that Plaintiff had moderate limitations in all four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. (Tr. 162). Dr. Haskins opined that Plaintiff could "understand and remember 1-3 step tasks," he could perform "short cycle tasks in a setting that does not have fast pace demand," and he could "handle tasks without strict time limitations or production standards." (Tr. 164–65). Dr. Haskins also wrote that Plaintiff could "superficially interact in the work place" and he could "work within a set routine where major changes are explained in advance and gradually implemented to allow the claimant time to adjust to the new expectations." On reconsideration in October 2018, Carl Tishler, Ph.D., affirmed Dr. Haskin's assessment in full. (Tr. 190–192).

In explaining why she credited the state reviewers' assessments, the ALJ explained that "the limitations expressed by the State agency consultants are supported by and consistent with the current evidence regarding the claimant's abilities in each of the functional domains discussed above." (Tr. 90). So the ALJ discussed both consistency and supportability both when evaluating the assessments and within the decision as a whole. *See* 20 C.F.R. § 404.1520c(c)(1-2) (discussing consistency and supportability as the most important factors in weighing medical opinion evidence and prior administrative medical findings). In addition to their assessments being consistent with the evidence, as reviewing physicians, Dr. Haskins and Dr. Tishler are familiar with the Social Security Administration's disability programs and are considered experts in the

---

[2] While the regulations at 20 C.F.R. § 404.1520c refer to the limitations opined by the state agency reviewing physicians and psychologists as "prior administrative medical findings," the Undersigned will refer to them as "assessments" or "opinions" for ease and clarity.

8

field of disability evaluation. *See* 20 C.F.R. § 404.1513a(b)(1) ("[O]ur Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."). Indeed, Social Security Ruling 17-2p, which became effective on March 27, 2017 for all claims, states that "State agency Medical Consultants (MC) or Psychological Consultants (PC) . . . are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act." SSR 17-2p, 2017 WL 3928306, at *3 (effective March 27, 2017). In other words, the state agency reviewing psychologists have the knowledge and experience evaluating Social Security disability cases and are deemed to possess specific understanding of both the disability programs and their evidentiary requirements. In addition to being disability experts, the state agency reviewing physicians are also known as neutral sources. *See Lucido v. Barnhart*, 121 F. App'x 619, 622 (6th Cir. 2005) ("[T]he reviewing physicians . . . have the strongest claims to neutrality."). Accordingly, the AJ properly relied upon the state reviewers' assessments.

Importantly, none of Plaintiff's treating physicians opined that he had any functional limitations at all, much less that he was disabled. *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 177 (6th Cir. 2009) ("As the ALJ's review of the administrative record indicates, no other treating or consultative physicians concluded that Price was disabled."). So, for this additional reason, the ALJ properly relied on the state agency psychologists to craft the RFC because they were the only doctors to recommend any work restrictions. *See Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 294 (6th Cir. 2006) ("[N]one of Watts's treating doctors during the relevant period . . . made detailed functional capacity analyses, which leaves the functional capacity forms from the medical reviewers as the best evidence.").

And the ALJ did not rely on the state agency reviewers' assessments alone. For example, the ALJ discussed that during mental status examinations, Plaintiff's "memory was grossly intact, his thoughts were logical, linear and goal oriented and he demonstrated adequate concentration and average intelligence." (*See* Tr. 86, 589, 981, 1008, 1190). The ALJ further noted that Plaintiff has "shown good response to medication and individual and group therapy" including his own self-reports of decreased anger, awareness of relationship patterns, improved interpersonal communications skills, good progress with mood and reduction of depressive symptoms, and enhanced confidence in ability to cope more effectively. (Tr. 87, 429, 548, 881–882, 1038–1039, 1058, 1081). *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014) (noting that "[d]isability is not supported when an individual's impairments are improved with treatment.").

The ALJ also addressed Plaintiff's presentation at appointments, noting that he was often appropriately dressed and groomed, generally maintained good eye contact, and presented as polite and cooperative. (Tr. 87, 404, 474, 694, 774, 792, 830, 980, 1103). Additionally, the ALJ found that Plaintiff's activities of daily living were consistent with the state agency assessments, which was an acceptable consideration. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."). For example, the ALJ noted that Plaintiff had no difficulty with performing daily activities such as preparing meals, performing housework, managing medications, or managing finances. (Tr. 87, 656, 701). *Berry v. Comm'r of Soc. Sec.*, 289 F. App'x 54, 56 (6th Cir. 2008) ("Berry's ability to live independently and perform regular household activities belies her claim that she is totally disabled."). The ALJ also considered Plaintiff's routines. On a typical day, he would attend the Veteran's Transition and Empowerment

Center, sometimes go to the gym, watch television, play games on his phone, and participate in home telehealth program and health buddy sessions. (Tr. 87, 546, 572).

Considering all of this, the ALJ concluded that the "state agency opinion further addresses the claimant's adaptation and concentration and persistence limitations in light of his anxiety and PTSD." (Tr. 91). Importantly, even though the ALJ found Dr. Haskins' and Dr. Tishler's assessments to be persuasive, she added additional limitations to the RFC to account for certain aspects of Plaintiff's history. Specially, she limited Plaintiff to:

> A) one to three-step short cycle tasks;
> B) a routine work setting where major changes are explained in advance and gradually
> implemented;
> C) no strict production quotas;
> D) no work performed at a strict production rate pace;
> E) only occasional interaction with co-workers, but no tandem or shared tasks;
> F) only occasional interaction with supervisors with no over-the-shoulder supervision; and
> G) only occasional interaction with the public, but not in a customer service capacity.

(Tr. 87–88).

These additional restrictions show that the ALJ considered and scrutinized the assessments of the reviewing psychologists in light of the record. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (finding that the ALJ subjected a non-examining opinion "to at least some scrutiny" where, inter alia "the ALJ … applied even greater restrictions in this area than [the non-examining doctor] opined were appropriate."). In sum, the ALJ did not err, and substantial evidence supports the crafted RFC.

### B. VA Disability Rating

Plaintiff also argues that in crafting her RFC finding, the ALJ should have given weight to the "VA's TDIU determination" of a 70% service connected disability rating due to his mood

disorder. (Doc. 16. at 4, *see* Tr. 635). As noted above, Plaintiff filed his application for Disability Insurance Benefits on July 27, 2018. (Tr. 82, 270–71). The regulations governing this claim state that for "claims filed on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504 (emphasis added). The regulations explain that the reason for this is that "Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs . . . — make disability . . . and other benefits decisions for their own programs using their own rules." *Id.* Accordingly, the regulations further expound that "[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules." *Id.* VA Disability Ratings are diagnosis-driven and not based on an evaluation of remaining functional capacity as is required under the Social Security Regulations. Thus, they do not contain function-by-function limitations.

Even under the prior regulations, the Sixth Circuit held that a VA disability rating does not bind an ALJ. *See Turcus v. Soc. Sec. Admin.*, 110 F. App'x, 630, 632 (6th Cir. 2004) ("[A] decision by another government agency as to an individual's disability is not binding upon the Social Security Administration."). Thus, the ALJ was not required to provide any analysis about Plaintiff's disability rating under the VA's rules for good reason. Indeed, in addition to the regulations cited at 20 C.F.R. § 404.1504 above, the regulations about the way in which the agency considers evidence for claims filed after March 27, 2017, also provide an independent basis explaining the ALJ's analysis in this case. Specifically, the regulations at 20 C.F.R. § 404.1520b for claims filed on or after March 27, 2017, deem decisions by other governmental agencies and

nongovernmental entities as well as and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 404.1520b(c)(1)-(3) (2017). The regulations thus make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c) (emphasis added).

Under both 20 C.F.R. § 404.1504 and 20 C.F.R. § 404.1520b, the ALJ did not have to provide any analysis about how she considered Plaintiff's service connected disability rating from the VA. Accordingly, the ALJ followed the regulations and properly explained that while there was a service connect disability rating "in the record of this case, the undersigned purposefully will not specifically cite or address them as precluded by our governing regulations." (Tr. 90). And this assignment of error is without merit.

### C. Off-Task and Absence Limitations

Plaintiff also asserts the ALJ should have constructed an RFC with off-task and workplace absence limitations. As part of this argument, it appears that Plaintiff believes the ALJ should have posed a hypothetical question to the vocational expert ("VE") that included such limitations. (Doc. 16 at 6).

Yet, no doctor opined that Plaintiff would be required any time off work or would otherwise be off task. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("The physicians who treated Ealy for these things never recommended any ongoing significant restrictions."). And rather than citing to specific medical records, Plaintiff appears to rely generally on his diagnoses of bipolar disorder, post-traumatic stress disorder, anxiety, and attention deficit hyperactivity disorder. (Doc. 16 at 6). But a diagnosis alone is not enough for proving disability. *Lee v.*

13

*Comm'r,* 529 F. App'x 706, 713 (6th Cir. 2013) ("The mere diagnosis of [an impairment] ... says nothing about the severity of the condition."). Plaintiff also relies on records where he complained of symptoms or limitations from these impairments. But it is well-settled that "a doctor's report that merely repeats the patient's assertions is not credible, objective medical evidence." *Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009). So that too is not enough.

And his citations to his symptom reports to his treatment providers and his episodes of anger and agitation are insufficient, because, "as a lay person, [neither the ALJ, nor Plaintiff, nor this Court is] qualified to interpret raw medical data in functional terms," and so the ALJ was barred from crafting specific limitations based solely on his own interpretation of the medical data. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726 (6th Cir. 2013). At base, Plaintiff's argument improperly asks the ALJ to "play doctor" by giving specific meaning to his subjective complaints when all of his own doctors declined to do so. *Meece v. Barnhart,* 192 F. App'x 456, 465 (6th Cir. 2006).

Last, Plaintiff relies on his testimony at the administrative hearing where he explained how his impairments allegedly affect him. But the ALJ found that the "evidence shows that [his] testimony regarding the extent of such symptoms and limitations is not fully supported." (Tr. 91). Plaintiff does not challenge the ALJ's subjective symptoms analysis and thus has waived any such argument. *Swain v. Comm'r of Soc. Sec.,* 379 F. App'x 512, 517-18 (6th Cir. 2010) (noting failure to raise a claim in merits brief constitutes waiver); *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) ("[Issues] adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

What is more, it is the job of the ALJ—and not the reviewing court—to evaluate the credibility of Plaintiff's subjective statements. *Foster v. Halter,* 279 F.3d 348, 353 (6th Cir. 2001)

14

("Our role is not to . . . examine the credibility of the claimant's testimony."); *Brainard*, 889 F.2d at 681 (6th Cir. 1989) ("We do not . . . make credibility findings."). Accordingly, this part of the ALJ's determination is given great weight and great deference. *Jones v. Comm'r*, 336 F.3d at 476 ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

In sum, the ALJ did not err in questioning the VE or by not including off-task and absence limitations in the RFC.

## IV. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

Date: October 13, 2021  /s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE